TOWN OF TWO RIVERS, Raymond Taddy, individually and as Chairman of the Town of Two Rivers; Henry Meyer, individually and as a Supervisor of the Town of Two Rivers; James Englebert, individually and as a Supervisor of the Town of Two Rivers; Charles Spring, Route 2, Two Rivers, Wisconsin 54241; Winifred Spring, Route 2, Two Rivers, Wisconsin 54241; Walter Eis, Route 2, Two Rivers, Wisconsin 54241; Verena Bartel, Route 2, Two Rivers, Wisconsin 54241; Peter Bartel, Route 2, Two Rivers, Wisconsin 54241; John Wilquet, Route 2, Two Rivers, Wisconsin 54241; Jim Christenson, Route 2, Two Rivers, Wisconsin 54241; and Peter A. Peshek, Wisconsin Public Intervenor, Petitioners-Respondents,†

v.

State of Wisconsin, DEPARTMENT OF NATURAL RESOURCES, Respondent-Appellant.
[Case No. 80–1733.]

TOWN OF PARIS, a municipal corporation, Petitioner-Respondent,

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES, Respondent-Appellant,

WASTE MANAGEMENT OF WISCONSIN, INC., Respondent-Appellant. [Case No. 81–318.]

Court of Appeals

*Nos. 80–1733, 81–318. Argued December 9, 1981.—*
*Decided December 24, 1981.*
(Also reported in 315 N.W.2d 378.)

---

† Petition to review denied.

For the respondents-appellants there were briefs by *Bronson C. La Follette,* attorney general; *Carl A. Sinderbrand,* assistant attorney general, and *David E. Stewart* of *Morgan & Stewart Law Offices* of Madison. Oral argument by *Mr. Sinderbrand.*

For the petitioners-respondents there were briefs by *Jerome L. Fox* of *Olsen, Winter & Fox* of Two Rivers; *Ron A. Kaminski* of *Kaminski & Rusboldt* of Manitowoc;

*Peter A. Peshek,* Wisconsin public intervenor, and *Matthew H. Quinn* of *Hand & Quinn, S.C.* of Racine. Oral argument by *Mr. Peshek* and *Mr. Quinn.*

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J. This is an appeal by both the Department of Natural Resources (DNR) and Waste Management of Wisconsin, Inc. in which they contend that contested case hearings cannot be held prior to a determination on site feasibility of solid waste disposal locations unless the DNR, in its discretion, chooses otherwise.

Wisconsin has adopted comprehensive statutes concerning the location, planning and licensing of solid waste disposal sites. The decision regarding site feasibility is made by the DNR, but the citizenry enjoys a right to demand a hearing before that decision is made. Because the statutes clearly provide that, in appropriate circumstances, the hearing can be a "contested case hearing" rather than a mere "legislative-type hearing," we affirm the holdings of the trial courts directing that contested case hearings take place. Since these cases involve a question of law, recitation of the facts will be limited.

Two cases have been consolidated by this court. In the Town of Two Rivers case, the County of Manitowoc sought to place a solid waste landfill on a parcel known as the Kafka-Eis property. The county filed a feasibility report with the DNR pursuant to sec. 144.44(2), Stats. Following proper notice by the DNR, the Town of Two Rivers and various others requested a hearing on site feasibility. The DNR promptly scheduled a legislative-type hearing. The town and some of the others responded by demanding that a contested case hearing be held. This demand was rejected by the DNR. An action was then initiated, pursuant to sec. 227.15, Stats., challenging the DNR's refusal to hold a contested hearing.

In the Town of Paris case, Waste Management of Wisconsin, Inc. sought to place a solid waste landfill on a parcel located in the Town of Paris. Waste Management submitted a feasibility report to the DNR, and the DNR approved the site without first giving notice to interested parties as required by law. The town began legal proceedings, but the DNR acknowledged its error and, pursuant to stipulation, withdrew its approval and, at the same time, notified interested parties of a public hearing to be held on a specified date. The town asked that this hearing be conducted as a contested case hearing, which request was rejected by the DNR. The hearing took place as scheduled but was a legislative-type hearing rather than a contested case hearing. The town filed its action contesting the DNR's decision to deny a contested case hearing and secured a stay until the ultimate decision of the issue.

There is an acute difference between a legislative hearing conducted pursuant to sec. 227.022, Stats., and a contested case hearing conducted pursuant to sec. 227.07, Stats. Although the difference has been described in numerous cases,[1] the trial court in the Two Rivers case aptly sums up the difference:

A hearing conducted under 227.022 is usually associated with rule-making activity of an agency. It can, as the petitioners have described it, be styled as an informational hearing. At such hearings an opportunity is afforded for the public, parties and the agency to be heard and exchange views and opinions. It is not, however, the equivalent of a contested case hearing. A contested case hearing is somewhat like a trial in a court of law. It is an adversary proceeding wherein testimony is taken under oath. Cross-examination is permitted. Rules of

[1] See Hall v. Banking Review Bd., 13 Wis. 2d 359, 108 N.W.2d 543 (1961); City of Milwaukee v. Public Serv. Comm'n, 11 Wis. 2d 111, 104 N.W.2d 167 (1960); Park Bldg. Corp. v. Industrial Comm'n, 9 Wis. 2d 78, 100 N.W.2d 571 (1960).

evidence have some impact in such a hearing. It is a hearing specifically designed to protect persons with interests that are distinct from those of the public generally; persons whose interests are substantial, interests which are affected by agency action or inaction.

Although both trial courts decided that contested case hearings should have been held, we need not defer to the trial court decisions since statutory interpretation is generally characterized as a question of law. *Sunnyview Village, Inc. v. State Department of Administration*, 104 Wis. 2d 396, 402, 311 N.W.2d 632, 635 (1981). This is because trial courts are in no better position to interpret the statute than is this court. *Id.* This is not to say, however, that an appellate court must ignore the reasoning of the trial courts. We will refer to trial court analyses when appropriate.

We start with sec. 144.44(2)(e), Stats. This section is part of the subchapter dealing with solid waste management and is particularly concerned with the site approval process. After the applicant files a feasibility report, the DNR sends, in addition to other prerequisites, a notice and a general summary of the feasibility report to the clerk of any county, city, village or town within whose boundaries any portion of the proposed site will be located. Sec. 144.44(2)(d), Stats. Then, sec. 144.44 (2)(e), Stats., allows a municipal body or any six persons to request a hearing on site feasibility. The language, in pertinent part, is as follows:

Within 30 days after the notice required under par. (d) is published, a written demand for a hearing on the matter may be filed by any county, city, village or town, or by any 6 persons. The demand shall indicate the interests of the municipality or persons who file it and state the reasons why the hearing is demanded. *A hearing demanded under this paragraph shall be conducted as provided under s. 227.022* and shall be held within 60

days after the deadline for demanding a hearing unless an environmental impact statement is required under s. 1.11. [Emphasis added.]

Both the DNR and Waste Management seize upon the emphasized portion of the statute. Noting that sec. 227.-022, Stats., outlines the procedure for a legislative-type hearing (informational hearing), they argue that sec. 144.44(2)(e), Stats., clearly mandates a legislative hearing because it explicitly states that the hearing shall be conducted pursuant to sec. 227.022, Stats. Neither this court, the two trial courts nor the party petitioners disagree with this reading of the statute. It is clear and unambiguous. ·

The DNR and Waste Management go on to conclude, however, that by mandating that a legislative hearing be held, the legislature intended that a contested case hearing not be held at the site feasibility stage of the approval process.

■ Were this the only statute regarding hearing rights before the DNR, we might be inclined to agree with the DNR and Waste Management's analysis. However, there is another statute which, when applicable, provides citizens with broadened participation in state agency actions beyond that afforded by the mere legislative hearing. This remedial statute is sec. 227.064, Stats. The statute provides as follows:

In addition to *any other right* provided by law, any person filing a *written request with an agency for hearing shall have the right to a hearing which shall be treated as a contested case if:*
. . . . [Emphasis added.]

The statute on its face is clear and unambiguous. The fact that the parties here disagree as to the meaning of the statute is not a controlling consideration. *National*

*Amusement Co. v. Department of Revenue,* 41 Wis. 2d 261, 267, 163 N.W.2d 625, 628 (1969). The test is whether well-informed persons *should have* become confused. *Id.* Here, we find no well-founded reason for such confusion. We are, therefore, not at liberty to disregard the plain clear words of the statute.

To demonstrate the plain meaning, we will discuss sec. 227.064(1), Stats., clause by clause:

In addition to any other right provided by law, any person filing a written request with an agency for hearing shall have the right to a hearing which shall be treated as a contested case if: [the criteria in (a)–(d) are met].

The first clause of sec. 227.064(1), Stats., establishes a prerequisite. At the outset, citizens must first previously have been accorded at least some "right" to a hearing elsewhere in the statutes. The language of the clause squarely tells us that this statute is but a supplement to a right previously accorded and is not intended to determine who has a right to a hearing in the first instance.

The second clause of sec. 227.064(1), Stats., simply tells the reader that any person, having a previously accorded right to a hearing, can have that hearing *treated* as a contested case if sec. 227.064(1)(a)–(d) are met. To get the hearing *treated* as a contested case, one need only ask, in a written request, that the hearing be contested in nature rather than be legislative in nature.

██

The plain and common meaning of sec. 227.064(1), Stats., then, is that citizens must have a right to some kind of a hearing in the first instance. If they do, then the citizens can request that the hearing be conducted as a contested case in lieu of, and not in addition to, a different kind of hearing.

Both the trial courts and the petitioners read sec. 227.-064(1), Stats., to mean that a person has a right to a contested case hearing *in addition to* any other hearing provided by law rather than *in lieu of* the other hearing. The DNR and Waste Management contend that this construction is contrary to both legislative intent and common sense since it would run the risk of overburdening the agencies with duplicative and unnecessary hearings. They have also expressed concern that if the trial courts' and petitioners' interpretation were adopted, then contested cases could be demanded by citizens at each of the three stages of the site approval process.

Our interpretation gives citizens the benefit of broader hearing rights while, at the same time, recognizing the validity of the DNR and Waste Management's objection. The DNR and Waste Management are correct. There should not be multiplicitous hearings. Nor should there be a right to a contested hearing where standing has not already been previously granted by the legislature.

We note, however, that there is no right of citizens to demand a hearing of any sort at the other two stages of the site aproval process, *i.e.,* planning and licensing. Therefore, the site feasibility stage presents the sole opportunity for properly affected citizens to demand the broad input into the decision-making process that can only be afforded by a contested hearing.

Our understanding of this statute is buttressed by the holdings of the supreme court in three cases: *Westring v. James,* 71 Wis. 2d 462, 472–73, 238 N.W.2d 695, 700–01 (1976) ; *Daly v. Natural Resources Board,* 60 Wis. 2d 208, 216–17, 208 N.W.2d 839, 843–44 (1973), *cert. denied,* 414 U.S. 1137 (1974), and *Town of Ashwaubenon v. State Highway Commission,* 17 Wis. 2d 120, 127, 115 N.W.2d 498, 502 (1962). Although the cases were decided based upon the law previous to the enactment of

sec. 227.075, now sec. 227.064, Stats., they are instructive. In each case, the supreme court implicitly held that a legislative hearing *can become* a contested case rather than holding that a contested case hearing will be granted *in addition to* a legislative hearing. Present sec. 227.-064, Stats., is not inconsistent with the three supreme court cases but, rather, codifies it.

By implementing the plain and unambiguous language of sec. 227.064, Stats., we find that the petitioners in this action have standing to demand a hearing since that standing is given by sec. 144.44(2)(e), Stats. The petitioners, further, have a right to change the hearing from a legislative one to a contested case if they meet the criteria set forth in sec. 227.064(1)(a)–(d), Stats.

Therefore, the fact that sec. 144.44(2)(e), Stats., specifically states that the hearing shall be conducted as a legislative hearing does not deprive petitioners of the right to have that hearing heard as a contested case. Section 227.064(1), Stats., makes clear that once a citizen has a right to a hearing, that citizen has the right to have that hearing changed to a contested case hearing, provided the proper criteria are met.

The DNR and Waste Management, however, urge us to find that even if secs. 144.44(2)(e) and 227.064(1), Stats., are unambiguous by themselves, the interaction of the two statutes operates to create ambiguity in either statute. We do not agree. Statutes must be construed *in pari materia* and harmonized, if possible. *State v. Wachsmuth,* 73 Wis. 2d 318, 325, 243 N.W.2d 410, 414 (1976).

We are persuaded that the mandates under secs. 144.-44(2)(e) and 227.064(1), Stats., are clear when read individually and when read together. Section 144.44(2)(e), Stats., grants, upon the request of an interested party, a hearing of the legislative type. This hearing is not one based upon the discretion of the agency, but rather

is one by right. Section 227.064, Stats., clearly states that, when another right is provided by law, an interested party who can meet the requirements of subsections (a)–(d) is entitled to have that hearing treated as a contested case hearing, as long as no exception under sec. 227.064(3), Stats., is applicable. There is, therefore, no conflict created when these two statutes are intermeshed.

Additionally, both the DNR and Waste Management claim that sec. 227.064(3), Stats., provides an exemption from the rigors of having the site suitability hearing tried as a contested case. Section 227.064(3), Stats., states as follows:

(3) This section does not apply to rule-making proceedings or rehearings, *or to actions where hearings at the discretion of the agency are expressly authorized by law.* [Emphasis added.]

The DNR and Waste Management claim that the emphasized language applies because another section of the solid waste law, sec. 144.431(2)(a), Stats., expressly authorizes hearings at the DNR's discretion. Section 144.431(2)(a), Stats., states:

(2) The department *may:*
(a) Hold hearings relating to any aspect of the administration of ss. 144.43 to 144.47 and, in connection therewith, compel the attendance of witnesses and the production of evidence. [Emphasis added.]

The DNR and Waste Management argue that since sec. 144.44(2)(e), Stats., only allows a legislative-type hearing, therefore, even if that language does not exclude contested case hearings altogether, it at least affords contested case hearings only at the DNR's discretion under sec. 144.431(2)(a), Stats.

We do not accept the argument. We must read statutes in such a manner as to avoid absurdity. *Wisconsin's En-*

*vironmental Decade, Inc. v. Public Service Commission,*
84 Wis. 2d 504, 528, 267 N.W.2d 609, 622 (1978). Ob-
viously, sec. 144.44(2) (e), Stats., posits a *mandatory*
hearing, not a hearing at the discretion of the DNR.
Section 227.064, Stats., allows a contested case hearing
for any mandatory proceeding when certain conditions
have been met. Section 144.431(2) (a), Stats., can only
be read to apply to those situations where no hearing
*whatsoever* is first mandated; it is meant only for those
cases where citizens have no standing to demand a hear-
ing but the DNR feels a hearing might be justified. It
in no way has any effect on the operation of sec. 144.44
(2) (e), Stats., or 267.064, Stats., because a citizen has
standing to demand a hearing, and, therefore, no discre-
tion can be afforded the agency.

Waste Management also urges us to consider a Legisla-
tive Council note contained in draft 125/5 of 1977 As-
sembly Bill 880 regarding proposed sec. 144.44(2), Stats.
This we decline to do for two reasons. First, we are by
no means convinced that this note reflects the intent of
the legislature. Second, and more importantly, the long-
standing principle is that, in the absence of ambiguity,
material extrinsic to the statute itself will not usually
be considered. *Town of Vernon v. Waukesha County,* 99
Wis. 2d 472, 478, 299 N.W.2d 593, 597 (Ct. App. 1980).
More particularly, legislative history is not pertinent to
an unambiguous statute. *Kenosha County Department of
Social Services v. Nelsen,* 95 Wis.2d 409, 414, 290 N.W.2d
544, 547 (Ct. App. 1980).

Having decided that sec. 227.064(1), Stats., allows
qualified citizens to have the hearing on site suitability
heard as a contested case, we next rule on whether the
petitioners in the two cases before us fulfill the qualifi-
cations of sec. 227.064(1) (a)–(d), Stats. These sub-
sections provide that persons have the right to a con-
tested hearing if:

(a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;

(b) There is no evidence of legislative intent that the interest is not to be protected;

(c) The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; and

(d) There is a dispute of material fact.

We will treat these subsections *seriatim.*

### (a) *Whether the Substantial Interest of the Petitioners is Threatened with Injury*

This criterion is conceded by the DNR, and, since it was not discussed by Waste Management in its brief, we presume Waste Management to have conceded the point.

### (b) *Whether the Petitioners have an Interest Which the Legislature Intended to be Protected*

The DNR and Waste Management argue that since sec. 144.44(2), Stats., mandates a legislative hearing, the legislature did not intend for feasibility studies to be subject to that additional scrutiny appropriate to a contested case hearing. This argument is a repetition of the DNR and Waste Management's earlier arguments on the meaning· of the statutes in question and is unavailing. The argument was best laid to rest by the trial court in the Two· Rivers case. The trial court stated:

The Department argues that by providing for a different type of hearing other than a contested case hearing in 144.44(2)(e) that there is evidence of legislative intent that the petitioners' interests in a contested case hearing are not to be protected. There is no merit in this argument since it is clear from the language of 227.064 that

the "interest" referred to at that point is the "substantial interest" set forth in Subparagraph (1)(a) of 227.064. The interests that these petitioners allegedly seek to protect involve environmental and property right concerns. It can hardly be said that there is evidence of legislative intent that those types of interests are not to be protected.

The DNR and Waste Management also argue that feasibility approval is a technical decision concerning the physical condition of the proposed site and preliminary engineering design concepts, and, therefore, the legislature must have meant to give final approval only to that body with the requisite technical expertise. They argue that the DNR has the technical expertise necessary to impose conditions and requirements for engineering and construction. The DNR and Waste Management both argue that it would be unwise for an independent hearing examiner to make an ultimate decision as would occur in a contested case hearing. They claim that it makes more sense to have a decision maker with technical expertise and that the legislature, by its language in sec. 144.44(2)(e), Stats., so intended.

We do not share the DNR and Waste Management's concern. First of all, they are wrong when they claim that if a contested case hearing is allowed, then the independent decision maker has the ultimate decision power. In point of fact, subsecs. 144.44(2)(f) and (3), Stats., expressly give the DNR the ultimate decision-making power, and a contested case hearing would not vitiate that intent, since sec. 227.09(3), Stats., which explains the powers of the DNR over the independent hearing examiner, is consistent with subsecs. 144.44(2)(f) and (3), Stats. Section 227.09, Stats., discusses the duties of hearing examiners in general. In most contested case hearings, the examiner is an official or employee of the agency or is borrowed from another agency. This ex-

aminer may only make *proposed* findings of fact and conclusions of law, as the ultimate decision rests with the agency. Sec. 227.09(1), (2), Stats. Such is not the case in contested cases involving Natural Resources hearings. An independent hearing examiner, rather than an "in-house" examiner, is selected. Yet, even though an independent hearing examiner is selected, the DNR may still exercise the ultimate decision-making authority. In fact, this conclusion was conceded by both the DNR and Waste Management during oral arguments.

The analysis is quite simple and is governed, as we stated above, by sec. 227.09(3), Stats., which states as follows:

With respect to contested cases, an agency may by rule or in a particular case may by order:

(a) Direct that the hearing examiner's decision be the final decision of the agency;

(b) Except as provided in sub. (2) or (4), direct that the record be certified to it without an intervening proposed decision; or

(c) Direct that the procedure in sub. (2) be followed, except that in a class 1 proceeding both written and oral argument may be limited.

Thus, the DNR may, if it wishes, direct that the hearing examiner's decision be final. On the other hand, it may direct that the record be certified to it without a proposed decision, or it may direct that the procedure outlined in sec. 227.09(2), Stats., be followed.

Under sec. 227.09(2), Stats., the examiner prepares a proposed decision, unless a majority of the officials of the agency who are to render the final decision are present for the hearing. If they are not present, then the examiner must include in the proposed decision the findings of fact, conclusions of law, order and opinion. Then, the proposed decision is sent to the DNR for the actual final decision. Thus, it cannot be said that the independent hearing examiner has the ultimate decision-

making authority. The DNR's expertise can still be used in an ultimate decision-making role.

The DNR's own administrative rules indicate an awareness of its power to be the ultimate decision maker. NR 2.155 reads as follows:

DECISIONS IN CONTESTED CASES. (1) EXAMINER DECISION. The hearing examiner shall prepare findings of fact, conclusions of law and decision subsequent to each contested case heard. Said decision shall be the final decision of the department, but may be reviewed in the manner described in NR 2.20.

(2) SECRETARY DECISION. (a) Notwithstanding (1) the secretary prior to hearing, may direct that the record be certified to the secretary for decision in accordance with the provisions of s. 227.09 (3) (b), Stats., without an intervening decision by the hearing examiner.

(b) Notwithstanding (1) the secretary prior to hearing may direct that the decision be made in accordance with the provisions of s. 227.09 (2) or (4), Stats.

A quick reading of the rule shows that the DNR may allow the decision of the independent hearing examiner to be final but need not do so. The secretary may direct that the record be certified or may direct that the proceedings be held as provided in sec. 227.09 (2), Stats., which has been discussed above.

Further, NR 2.20 allows review of a decision by the independent hearing examiner even if it is a final decision. All that need take place is that a party, adversely affected by the independent hearing examiner's decision, file a written petition for review by the secretary. The secretary of the DNR then has the power to change the decision.

Although conceding its authority to act as the ultimate decision maker, the DNR claims it is reluctant to exercise this power since the intent of the legislature was that the independent hearing examiner make the final decision in

the case. We disagree, as our analysis has shown no legislative inhibition upon the DNR.

The DNR further claims its powers to act as ultimate decision maker are limited to individual cases rather than to a general power to take away authority from the independent hearing examiner in all site feasibility cases. This argument is not compelling since we doubt that the DNR would want to exercise its authority to limit the independent hearing examiner's ability to render a final decision in every case.

We, therefore, conclude that the ultimate decision-making authority can rest with the DNR and that is where it should be since final accountability rests with the agency. Sec. 144.44(2) (f), Stats.

Second, it cannot be said that the ultimate decision-making authority of the DNR would be a mere rubber stamp to the proposed decision of the independent hearing examiner. There is nothing about a contested case hearing which limits the evidence that can be submitted by the DNR. The DNR may still perform its own tests and research and may still use the same expertise that it would in preparing for a legislative hearing. The only difference is that the results of the research and the expert opinions relied upon by the DNR would be subject to discovery and cross-examination in a contested case hearing. In reality, the true difference between the legislative hearing and the contested case hearing is that the DNR's findings can be more adequately debated in contested case hearings. This is not contrary to the legislative intent. The DNR is the only state agency with a statutorily-created independent hearing examiner system. Sec. 227.012(2), Stats. Moreover, the legislature created the Public Intervenor as an institutional watchdog on the DNR. Also, the DNR was not exempted by

the legislature from the provisions of sec. 227.064, Stats. Finally, independent DNR hearing officers do hear technical matters in other areas involving the granting of mining, dam, bridge and water permits. They also handle environmental pollution cases pursuant to sec. 144.-975, Stats. All of these statutes add up to the fact that the legislature has acted to give a quality of neutrality to governmental decision making and to thereby limit the broad authority previously given to the DNR. This has been done by giving citizens a proper vehicle to challenge an action before the agency when the citizen is. imminently threatened with injury. Therefore, we conclude that the petitioners have an interest which the legislature intended to be protected.

### (c) *Potential Injury Different From the Potential Injury to the General Public*

The DNR argues that the petitioners in the Two Rivers case suffered no injury distinct from that of the general public. We disagree. Seven petitioners in that case were owners of the land being sought as the landfill or were contiguous neighbors. These petitioners made allegations that the proximity of the landfill would harm property values, would subject the area to environmental pollution, would damage a substantial amount of wetlands, would harm the navigational stream near the landfill, would threaten the private wells and would produce serious drainage and other topographical changes. We conclude these petitioners have adequately shown potential injury different from the potential injury to the general public.

In the Town of Paris case, the town was the only petitioner demanding a contested hearing. Yet, we hold that

the Town of Paris (and for that matter, the Town of Two Rivers) qualifies under this criterion as well as do the individual petitioners in the Town of Two Rivers case. A town frequently has interests substantially at odds with its county. While the general public in that county may want and need a landfill, the town has a legitimate concern with environmental pollution, property values, potential drainage, wetland conservation, noise, traffic, dust and other problems pressing to the town but not pressing to the general public.

The DNR points to *Ashwaubenon v. State Highway Commission,* 17 Wis. 2d 120, 115 N.W.2d 498 (1962), and *Citizens for Sensible Zoning, Inc. v. DNR,* 90 Wis. 2d 804, 280 N.W.2d 702 (1979), in support of its argument that the towns are not so uniquely situated. In both cases, a community claimed a direct impact from a DNR determination. The *Ashwaubenon* case involved the relocation of a public highway away from the town which, it was feared, would harm the town's business community. *Citizens* concerned the adoption of a controversial flood plain area. In the *Ashwaubenon* case, the supreme court stated that the town "had only the same interest in the proposed relocation as any other affected municipality or landowner; it did not have any special kind of interest which would convert the proceedings before the highway commission into a contested case." *Ashwaubenon,* 17 Wis. 2d at 128, 115 N.W.2d at 502. The *Citizens* court reiterated the *Ashwaubenon* language and found a lack of the particularized, adversary interests necessary for it to be characterized as a contested case.

The two cases are inapposite to the cases here. In the *Ashwaubenon* and *Citizens* cases, the court ruled that the determination would inevitably affect the rights of everyone in a general manner. In the cases before us, the problems of property values, drainage, change in topog-

raphy and the danger to private wells in the towns are immediate and particularized. Therefore, the towns are proper petitioners.

Waste Management argues that a town is not a "person" within the definition of sec. 227.064, Stats., and, therefore, does not have standing to demand a contested case hearing. We reject this contention as meritless. As we indicated previously, sec. 227.064, Stats., does not confer standing to hearing rights in the first place; it only confers the prerogative to change the right to a previously obtained hearing into a contested case hearing when the right to a contested case has not already been expressly recorded. Thus, we need only look to sec. 144.44(2)(e), Stats., to determine that towns have standing to demand a hearing. Section 144.44(2)(e), Stats., specifically allows towns the right to demand a hearing. Therefore, the question is answered.

### (d) *Disputes of Material Fact*

The DNR argues that there cannot be a dispute of material fact until the agency issues its findings of fact on site feasibility. We do not agree. As pointed out by the Town of Two Rivers in its brief, sec. 227.064(1), Stats., does not require agency findings of fact prior to a demand for a hearing. Here, moreover, the factual dispute is clearly delineated.

In site feasibility dispositions, the facts in dispute are often between the petitioners and the developer. The developer submits a feasibility report. The petitioners frequently obtain studies reviewing the report and dispute the report. This is what has happened in the two cases before us. After reviewing the feasibility report, the petitioners in the Town of Two Rivers case wrote to the DNR expressing concerns about the saturation concepts,

the ground and surface pollution and the possible danger to private wells. In the Town of Paris case, there allegedly was evidence that the private wells in the town might be contaminated with a cancer-causing agent called polychlorinated biphenyl.

Whether the concerns in both cases are true is not the issue. Rather, the issue is whether there are material facts in dispute such that an adjudicatory hearing is demonstrably necessary. We hold that there are. Legislative hearings most commonly arise out of the promulgation of regulations, where the interests of individuals are merely abstract. The cases at hand are not of that type. Instead, these are the kinds of cases where a judicial inquiry is needed to investigate, disclose and weigh interests of *particular* individuals who will be touched by the decision. Thus, the disputed facts cry out for the adjudicatory process.

Accordingly, we conclude that in both cases the prerequisites found in sec. 227.064(1)(a)–(d), Stats., have been met.

We affirm both trial courts. We are aware that the DNR has had a legislative-type hearing in the Town of Paris case despite a written demand for a contested case hearing. That shall not prevent the Town of Paris from receiving a contested case hearing in this case. The stay ordered by the trial court in the Town of Paris case shall remain in effect but may be changed by that court as it sees fit. We further order that the DNR shall hear the suitability proceeding in the Town of Two Rivers action as a contested case.

*By the Court.*—Judgments and order affirmed with directions.