STATE of Wisconsin, Plaintiff-Respondent,

v.

Willie J. WILLIAMS, Defendant-Appellant,†

Otis HARRIS, Appellant.†

Court of Appeals

*No. 88-0907-CR. Submitted on briefs January 6, 1989.—Decided January 26, 1989.*

(Also reported in 436 N.W.2d 924.)

† Petition to review denied.

For the defendant-appellant and appellant the cause was submitted on the brief of *Jeffrey D. Knickmeier,* of Stoughton.

For the plaintiff-respondent the cause was submitted on the brief of *Stephen Ehlke,* assistant district attorney.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. Willie Williams used the shotgun which is the subject of this appeal in the commission of a crime. Under sec. 968.20(1m)(b), Stats. (1985–86),[1] the shotgun could not be returned to him. He therefore transferred the weapon to Harris. He then moved the trial court under sec. 968.20(1) to return the gun to Harris. The court denied his motion. Williams and Harris appeal. We affirm the trial court's decision.

The state argues that when the seized property is a firearm used in the commission of a crime, sec. 968.20(1m)(b), Stats., permits its return only to the person who was the rightful owner of the firearm on the date of the offense, if that owner had no prior knowledge of and did not consent to the commission of the crime.[2] The trial court so held.

Williams and Harris contend that sec. 968.20(1m)(b), Stats., deals with possession of a firearm, not ownership. They claim that there is no reason why the shotgun cannot be returned to Harris, since he is now the "rightful owner" of the gun and he had no prior knowledge of nor did he consent to Williams' crime. They argue that what they seek to do is exactly what was done in *Milwaukee v. Dyson*, 141 Wis. 2d 108, 413 N.W.2d 660 (Ct. App. 1987).

---

[1] All references to sec. 968.20, Stats., are to the statute as it appeared in the 1985–86 Wisconsin Statutes.

[2] Section 968.20(1m)(b), Stats., provides:

> If the seized property is a firearm or ammunition, the property shall not be returned to any person who committed a crime involving the use of the firearm or the ammunition. The property may be returned to the rightful owner under this section if the owner had no prior knowledge of and gave no consent to the commission of the crime. Property which may not be returned to an owner under this subsection shall be disposed of under subs. (3) to (5).

We conclude that sec. 968.20(1m)(b), Stats., is ambiguous. The fact that the parties disagree as to the meaning of a statute is not a controlling consideration. *Town of Two Rivers v. DNR,* 105 Wis. 2d 721, 728, 315 N.W.2d 378, 381 (Ct. App. 1981), *overruled on other grounds, Milwaukee Met. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 72, 375 N.W.2d 648, 652 (1985). "The test is whether well-informed persons *should have* become confused." *Two Rivers,* 105 Wis. 2d at 729, 315 N.W.2d at 381.

A reasonably well-informed person could conclude that sec. 968.20(1m)(b), Stats., does not prevent the owner who used a firearm in the commission of a crime from transferring the firearm to an innocent person who becomes the "rightful owner" as sec. 968.20(1) requires. An equally well-informed person could conclude that the "rightful owner" is the person, other than the person who committed the crime, who owned the firearm when the crime was committed.

> The guiding principle of statutory construction is to determine the intent of the legislature. ... When a statute is ambiguous, a reviewing court may resort to extrinsic aids to determine legislative intent.
> "One of the most valuable extrinsic aids of judicial construction is legislative history." *Milwaukee Co. v. Labor & Ind. Rev. Comm.,* 113 Wis. 2d 199, 204, 335 N.W.2d 412, 415 (Ct. App. 1983). [Citations omitted.]

*State v. Vonesh,* 135 Wis. 2d 477, 482–83, 401 N.W.2d 170, 173 (Ct. App. 1986) (heading omitted). We note that the state agrees that resort to the legislative intent is appropriate.

855

The legislative history of sec. 968.20, Stats., supports the trial court's conclusion. Section 968.20 was created by sec. 63, ch. 255, Laws of 1969. A note to the section by the judicial council criminal rules committee states:

> This section is a new provision which establishes a simplified procedure for obtaining the return of property seized with or without a warrant. Obviously if such property is needed for use as evidence, it need not be returned unless arrangements can be made for its subsequent use as evidence. Contraband need never be returned.

Prior to the enactment of sec. 968.20, sec. 963.04, Stats. (1967), governed the return of seized property. This section was previously numbered sec. 363.04, Stats. Section 363.04 was revised in the criminal code revision, sec. 233, ch. 631, Laws of 1949, to read:

> Property seized under a search warrant or validly seized without a warrant shall be safely kept by the officer ... so long as necessary for the purpose of being produced as evidence on any trial. As soon as may be thereafter it shall be disposed of as follows, upon the order of the court:
>
> . . . .
> (8) Firearms, ammunition, explosives, bombs, infernal machines, and like devices, which have been used in the commission of a crime, shall be shipped to, and become the property of the state crime laboratory.

The 1969 revision eliminated any reference to firearms.

The "simplified" procedure contained in sec. 968.20, Stats. (1969), proved to be too simple. In particular, a gap in the legislation was found to exist

with respect to seized firearms. Section 14, ch. 260, Laws of 1977, created sec. 968.20(3) to provide a procedure to dispose of seized firearms. No special provision was made with respect to seized firearms used in the commission of a crime. By sec. 884, ch. 221, Laws of 1979, the legislature expanded the procedures for the disposal of firearms. Again, however, no special disposition was required of firearms used in the commission of crimes. Firearms used in the commission of crimes were dealt with in sec. 2, 1983 Wis. Act 278 which created sec. 968.20(1m)(b).

The history of sec. 968.20(1m)(b), Stats., establishes that the legislature intended the term "rightful owner" to apply only to the innocent person who owned the firearm at the time of commission of the crime. In its analysis of 1983 Wis. Act 278, the legislative reference bureau stated:

> This proposal revises the treatment of seized firearms .... If the person committed a crime with a firearm ... the firearm ... may not be returned to him or her. The rightful owner of a seized firearm ... may *reobtain* that property if the owner had no prior knowledge of and gave no consent to the commission of the crime. [Emphasis added.]

Plainly, a person who did not own the firearm at the time of commission of the crime could not "reobtain" that property.

The trial court correctly concluded that, under sec. 968.20(1m)(b), Stats., the shotgun could not be returned to Harris because he was not the rightful owner at the time Williams committed the crime of reckless use of a firearm. The shotgun could only be disposed of as provided in sec. 968.20(3) to (5).

*Dyson* is inapposite because the guns which were transferred in that case were not used in the commission of a crime.

It is argued on behalf of Williams, that due process requires that a person convicted of a crime be able to transfer his or her property interest in a firearm used in the commission of the crime. We disagree. We conclude that the state may, in the exercise of its police power, confiscate a firearm used in the commission of a crime. The principles which apply to contraband extend to a statute which provides for the confiscation of such firearms. The forfeiture of contraband is an exercise of police power, related to the law of criminal offenses. *State v. Voshart,* 39 Wis. 2d 419, 435, 159 N.W.2d 1, 9 (1968). The concept of contraband "is hardly more than a form through which the Government seeks to prevent and deter crime." *Warden v. Hayden,* 387 U.S. 294, 306 n. 11 (1967), *quoted in Voshart,* 39 Wis. 2d at 435 n. 33, 159 N.W.2d at 9-10.

Section 968.20(1m)(b), Stats., satisfies legitimate police power objectives. First, it operates before the fact to deter persons from using firearms in the commission of crimes. Second, and most important, it minimizes the likelihood that a firearm which has been used in the commission of crime will find its way back into the hands of the criminal or into the hands of his or her associates who may likewise be inclined to criminal activity.

The procedure followed in this case satisfied Williams' due process rights.[3] Section 968.20(1m)(b),

---

[3]The briefs do not argue Harris's due process rights. Harris had no property interest in the shotgun because Williams could not convey him any interest.

Stats., notified him that his right to possession and ownership of a firearm would be forfeited if the firearm was used in the commission of a crime. He had an opportunity to be heard as to his innocence in the criminal proceedings and to be heard as to his right to ownership and possession of the firearm, in the criminal proceedings and under sec. 968.20(1).

*By the Court.*—Decision affirmed.

DYKMAN, J. *(concurring).* When one court of appeals district overrules a case written by another district, it is better policy, and is less confusing to do so directly rather than by implication.[1] Here, the majority overrules *Milwaukee v. Dyson,* 141 Wis. 2d 108, 413, N.W.2d 660 (Ct. App. 1987) by distinguishing that case on a point not relevant to the *Dyson* opinion. *Dyson*'s reasoning is ignored. Instead, a different analysis, inconsistent with *Dyson*'s analysis, is adopted. *Dyson* is therefore effectively but only implicitly overruled. I would do so directly.

In *Dyson,* 141 Wis. 2d at 112, 413 N.W.2d at 662, we said:

> Under sec. 968.20(1), Stats., "[i]f the right to possession [of property seized pursuant to a search warrant] is proved to the court's satisfaction, it shall order the property ... returned." *There is nothing in the statute which requires the property to be returned to the person who was the legal owner, or on whose property the weapons were found, at the time it was confiscated.* In this case, the trial court properly determined the right to possession, as evidenced by the court's requirement that a purchase agreement transferring ownership of the weap-

---

[1]We followed the direct-overrule method in *State v. Marty,* 137 Wis. 2d 352, 363 n. 1, 404 N.W.2d 120, 125 (Ct. App. 1987).

ons be executed prior to the entry of its order, before ordering that the property be returned. (Emphasis added.)

Dyson's guns were on his property when they were seized by the police. The trial court did not determine whether Dyson's guns were involved in the commission of a crime, and our opinion does not consider this point. After Dyson's conviction, he gave his guns to his son. The trial court upheld that transfer and we affirmed because we concluded that the purchase agreement gave a right of possession of the guns to Dyson's son. This reasoning is not dependent upon whether Dyson used the guns in the commission of a crime.

After he was convicted, Willie Williams gave his gun to Otis Harris. The majority declines to follow *Dyson* because Williams used the gun in the commission of a crime and Dyson's guns were not involved in the commission of a crime. Even if we knew whether Dyson's guns were used in the commission of a crime, that hardly distinguishes a case decided because we concluded that guns could be validly transferred from one not permitted to possess them to one who could legally do so, notwithstanding sec. 968.20, Stats.

We do not know whether Dyson committed a crime involving the use of the guns. Had we considered that factor dispositive, our opinion would have at least mentioned it. The only conclusion to draw from *Dyson* is that we considered it irrelevant whether the guns were involved in the commission of a crime.

The only question in this case is whether Otis Harris is the rightful owner of the gun. We held in *Dyson* that an assignee is entitled to possession of guns seized by the police. The majority suggests that the statutory language "[t]he property may be returned to the rightful owner" really means "[t]he property may be

returned to the person who owned the firearm at the time of the commission of the crime." Of course, the statute does not read that way. Had we concluded in *Dyson* that sec. 968.20(1m), Stats., reads as the majority now holds, we would have remanded to permit the circuit court to determine whether Dyson's guns were used in the commission of a crime.

Though I think that the majority errs by interpreting secs. 968.20(1) and (1m), Stats., in a manner inconsistent with *Dyson,* I conclude that we should overrule *Dyson* directly. Sections 968.20(1) and (1m) require an initial inquiry into whether seized firearms or ammunition were involved in the commission of a crime. "Involved" is a broad term. A firearm may be involved in the commission of some crimes by its mere presence. If a firearm is involved in the commission of a crime, it becomes the property of the State Crime Laboratories, unless the owner of the firearm did not have prior knowledge of the crime or consent to it. Secs. 968.20(1m) and (3)(b). "Owner" can only refer to the owner at the time the crime is committed. Because it is undisputed that Williams used his gun to commit a crime, I would affirm the trial court's order.